UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURIE McFALL,

    Plaintiff,

v.

BASF CORP.,

    Defendant.
                                    /

Case No. 05-70325

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Laurie McFall has sued her former employer, BASF Corporation, for terminating her in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*, which protects her ability to take sick time away from work for a serious health condition. Defendant BASF Corporation brings this Motion for Summary Judgment on the grounds that (1) Plaintiff failed to give Defendant notice of her need for FMLA leave, (2) Plaintiff cannot demonstrate a serious medical condition sufficient for FMLA protection, and (3) Plaintiff cannot demonstrate that her absences were due to her medical condition. For the following reasons, the Court GRANTS Defendant's Motion for Summary Judgment.

**I.    Background**

In 1995, Plaintiff began working at Defendant's Wyandotte, Michigan, plant, which produces urethane automotive suspension parts. She was, and remained throughout her career with Defendant, an at-will employee.

Defendant's leave policy places no cap on sick leave, but the "plant standard" at its Wyandotte facility is six days per year. (Br. of Def. 2.) An employee who misses three or

fewer consecutive days of work can simply return to work without complication. (Gildersleeve Dep. 14.) An employee who miss multiple[1] consecutive days, however, must undergo a "nursing assessment," in which Defendant's Medical Department verifies the employee's ability to return to work, and determines whether any work restrictions are necessary. (*Id.* at 15.) The Medical Department then submits an Occupational Health Evaluation Summary and Recommendation ("Health Evaluation") stating simply whether the employee is healthy enough to work, and what restrictions (if any) should be placed on the employee. The Medical Department is prohibited, however, from divulging any specific information about employees' health. (*Id.* at 52-53.) Employees missing multiple days must also present Defendant with a note from a treating physician. (*Id.* at 14; Deters Dep. 11, 26.)

This lawsuit centers around the thirteen days of sick leave that Plaintiff took between January and August of 2003.[2] Plaintiff first missed work on March 21. There is no evidence that she informed Defendant of the reason for her absence. Indeed, she cannot now recall why she missed work on March 21, except to say that she was "sick." (McFall Dep. 51.)

---

[1]The exact number of days is unclear. Defendant states that the heightened requirement applies to "[a]n employee who misses *three or more* consecutive days . . . ." (Br. of Def. 2 (citing Gildersleeve Dep. 14) (emphasis added).) When asked to clarify, however, Defendant's source for this statement makes clear that "[i]t's *more than three*." (Gildersleeve Dep. 15.) In other words, an employee who misses exactly three days need not submit to a medical evaluation. Stephen Deters, however, states that if employees "were off on [short-term disability] for *more than five days*, they had to report to the site medical . . . ." (Deters Dep. 26.)

[2]Defendant points out that Plaintiff's "attendance record in 2003 was not an aberration but rather a continuation of the pattern set in prior years." (Br. of Def. 3.)

2

Plaintiff missed work again on April 9, 10, and 11.  This time she provided a doctor's note upon her return, which simply cited "medical illness."  The note was dated April 11, and stated, "Please excuse from work today to return 4-14-03."  (Def. Supp. Ex. 3.)  On April 14, Plaintiff was examined by Defendant's nurse, Patricia Gildersleeve, who cleared Plaintiff to return to work without medical restrictions.  (Br. of Pl. Ex. 8.)  Gildersleeve's notes suggest that Plaintiff had "symptoms of URI" (Br. of Pl. Ex. 6), or upper respiratory infection, but Gildersleeve states in her deposition that Plaintiff's symptoms were also consistent with asthma, common cold, or emphysema.  (Gildersleeve Dep. 34.)  Plaintiff states that her absence was due to an upper respiratory infection.  (Br. of Pl. 2.)

On April 27, Plaintiff was verbally warned about her extensive use of sick days.  (Br. of Def. Ex. A.)  She again missed work on May 28.  As with her March 21 absence, Plaintiff gave no excuse, and she cannot now recall exactly why except to say that she was "sick."  (McFall Dep. 52-53.)

Plaintiff missed work on June 6.  At her deposition, Plaintiff could not recall why she missed work on June 6, except to say that she was "sick."  (McFall Dep. 53.)  She now suggests, however, that her absence was due to Achilles tendinitis.  A doctor's note, dated June 9, cites only "medical illness," but directed Plaintiff "to perform light duty, . . . to sit instead of standing . . . ."  (Def. Supp. Ex. 4.)  Further, Plaintiff's Health Evaluation, which was completed on June 10, states that Plaintiff should "sit down with minimal standing."  (Br. of Pl. Ex. 10.)  Another doctor's note, dated June 25 after a follow-up appointment, states, "Tendinitis Right Achilles," and directs Plaintiff to "continue 'sit down' work" until June 30.  (Def. Supp. Ex. 6.)

Plaintiff missed again on July 22 and 23. She cannot recall exactly what ailment kept her from work, beyond saying that she was "sick." (McFall Dep. 53.)

Plaintiff missed August 12, 13, 14, and 15. She presented a doctor's note dated August 14 citing "medical illness." (Def. Supp. Ex. 6.) On August 18, Nurse Patricia Gildersleeve found Plaintiff fit to return to work without restriction. (Br. of Pl. Ex. 9.) Gildersleeve's notes state that Plaintiff was off of work for "HTN," and that she'd experienced "migraines." (Br. of Pl. Ex. 6.) Plaintiff contends that these notes show that she was suffering from "hypertension/migraine."[3]

On August 12, 2003, Defendant responded to Plaintiff's repeated absences by issuing a "written warning" stating in part,

> On 4/27/03 you were given a verbal warning about your unacceptable attendance level . . . . [Y]our attendance remains unacceptable and must be corrected . . . .
>
> Continued unacceptable attendance will result in progressive discipline, up to and including termination of employment at BASF . . . .
>
> Beginning today any call-offs of work for any reason must be made to Mr. Deters, Mr. Pellow, or Mr. Staples directly, unless you are prevented from doing so by extraordinary circumstances . . . .

(Br. of Def. Ex. A.)

Despite this written warning, Plaintiff missed work again on August 28, also citing sickness. (Br. of Def. Ex. B.) Defendant responded with a "Final Written Warning," which stated, "As a result of your continuing unacceptable attendance you are being issued discipline in the form of this final warning. It is your responsibility to correct your

---

[3]Defendant points out that Plaintiff's Response Brief is the first time she's asserted that she suffers from these problems. (Repl. Br. of Def. 5.)

4

attendance issues beginning immediately.  Additional incidents of absence will result in further disciplinary action up to and including discharge." (*Id.*)

Then, on October 25, Plaintiff failed to show up for an overtime midnight shift.  Plaintiff claims that when her shift leader had asked her to work the overtime shift, she said, "I might . . . .  I had already worked overtime.  I told him I wasn't sure if I would work the overtime, because midnights is hard to work overtime.  I said if I felt okay, I would work it.  If I didn't, I would call.  He said make sure you call and let them know, and I did." (McFall Dep. 23-24.)  In fact, Plaintiff did call, but she called "[j]ust the plant number." (*Id.* at 25.)  She told the acting shift leader that she "decided not to work the overtime.  He said no problem, he would let [the shift leader] know." (*Id.*)  Plaintiff did not call Mr. Deters, Mr. Pellow, or Mr. Staples directly.  Plaintiff's employment was terminated shortly thereafter. (*Id.* at 26-27.)

In her complaint, Plaintiff alleges that she suffers from the FMLA-qualifying serious health condition of "asthma and periodic bronchitis," and that "[d]ue to her asthma and bronchitis, Plaintiff missed several days from work in 2003, including March 21, April 9-11, May 28, June 6, July 22-23, August 12-15, and 28." (Compl. 2.)  Plaintiff has now modified her argument slightly.  Recognizing that the only absences linked by evidence to asthma and/or bronchitis were on April 9, 10, and 11, Plaintiff now argues that her absences were also due to Achilles tendinitis, hypertension, and migraine.

Defendant makes three arguments in its Motion for Summary Judgment.  First, Defendant argues that Plaintiff failed to notify BASF of her need to take FMLA leave or of her serious health condition.  Second, Defendant argues that Plaintiff failed to show that she had a "serious health condition" protected under FMLA.  Finally, Defendant argues that

even if Plaintiff had a "serious health condition," she cannot show that it caused her absences.

## II.   Standard of Review

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which a jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III.   Discussion

The Court need not address whether Plaintiff's various maladies were "serious health conditions" under FMLA, or whether Plaintiff can prove that her absences were due to those conditions. The record makes clear that Plaintiff failed to give Defendant adequate notice of her need for medical leave, and therefore cannot now claim that Defendant violated FMLA by terminating her employment. An employee seeking the protection of FMLA owes her employer at least the knowledge that her absences are caused by what she believes to be a "serious health condition."

FMLA allows employees up to twelve weeks of medical leave per year if they suffer "a serious health condition that makes the employee unable to perform the functions of [his or her] position." 29 U.S.C. § 2612(a)(1)(D). FMLA's notice requirement states that "the employee . . . shall provide the employer with not less than 30 days' notice, before the date of the leave is to begin . . . except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable." 29 U.S.C. § 2612(e)(2)(B).

Not every need for medical leave is foreseeable, and an employee involved in an accident or stricken with an unforeseen illness is not subject to the above advance notice provision. See, e.g., Cavin v. Honda of America Mfg., Inc., 346 F.3d 713 (6th Cir. 2003) (employee injured in motorcycle accident). When FMLA leave is unforeseeable, the employee must give notice to his or her employer "as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice . . . within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." 29 C.F.R. § 825.303(a).

7

An employee need not use any magic words, or even expressly mention FMLA, in a request for leave. "Rather, the critical test for substantively-sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered him unable to perform his job." *Brenneman v. MedCentral Health System*, 366 F.3d 412, 421 (6th Cir. 2004).

Applying these principles to Plaintiff's absences in 2003, it is clear that Plaintiff failed to provide Defendant with the type of notice required by FMLA. First, Plaintiff never once "requested" leave for her medical condition; on the three occasions when she informed Defendant's medical department why she had missed work, she did so *after the fact*. "When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). Plaintiff must have known at some point prior to the beginning of her scheduled shifts that she would need time off because of her health problems. There is no evidence that she ever notified Defendant, or even mentioned her specific ailments when she notified Defendant that she would be absent. Plaintiff has provided no reason why it was not practicable for her to do so.

Even assuming, however, that each of Plaintiff's absences constituted an "emergency," for which no leave "request" was possible and for which Plaintiff was incapable of telling Defendant about her illnesses (or having somebody do so for her), Plaintiff nevertheless failed to give Defendant sufficient notice of her need for medical leave.

Plaintiff *now* claims[4] that her 2003 absences "generally relate[d] to asthma or bronchitis." (*Id.* at 71-72.) Putting aside the fact that Plaintiff has now expanded her list of ailments to include Achilles tendinitis, hypertension, and migraines, Plaintiff's explanation does not constitute notice under the FMLA. The use of the word "employee" in the FMLA illuminates a significant limitation on the timing of the required notice: It must be provided *during* the employment relationship, not after the employee has been terminated. *See Brohm v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir. 1998); *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 451 (6th Cir. 1999). Thus, for purposes of FMLA notice, the Court must ignore Plaintiff's post-termination claims of health problems, including all of those made during her deposition and in her filings. What is relevant at this stage are Plaintiff's statements to Defendant during the course of her employment relationship.

Plaintiff has pointed to no evidence that when she returned to work—or at *any* time during the course of her employment—she informed her supervisors of any specific reason for her thirteen health-related absences. Rather, she simply took these "sick" days without any clear explanation as to why.

Plaintiff points out that "time off is coded in eight different ways, but there was no designation for FMLA time. More importantly, the employee time cards completed by the employees and signed by their supervisors had no means by which an employee could designate time off as FMLA time." (Br. of Pl. 5-6.) She seems to suggest that without an "FMLA" check-box on her time card, she was prevented from bringing her illness to

---

[4]Actually, Plaintiff agreed to her counsel's question by simply stating, "Yes." Defendant objected to this evidence on the ground that it resulted from impermissible leading questioning. (McFall Dep. 71-72.)

9

Defendant's attention. But Plaintiff presumably could have written something on her time card, written a letter to her employer, or just approached one of her supervisors and said why she had been absent. She certainly had several opportunities, as she was repeatedly disciplined in person for her mounting absences.[5] She did nothing reasonably calculated to make Defendant aware of her need for FMLA-qualifying medical leave.

Plaintiff also suggests that some employees of Defendant were aware of her health problems prior to her absences. Even if Defendant had learned of Plaintiff's health problems earlier, however, Plaintiff's generic excuses were insufficient to notify her employer that her leave was FMLA-qualifying. *Brenneman*, 366 F.3d at 423 n. 9 ("even if . . . defendant knew of plaintiff's diabetes and his past need for FMLA leave for diabetes-related absences[, this does not] create a genuine issue of material fact as to whether plaintiff's 'call-in' [stating he 'wasn't doing well and . . . wouldn't be in today'] gave defendant sufficient notice").[6]

---

[5]The written warnings to Plaintiff contain signature lines for the employee, but Plaintiff did not sign them. Where her name should appear, the first written warning states, "Employee refused to sign on 8/18/03." (Br. of Def. Ex. A.) The second states, "Reviewed letter—Employee refused to sign 9-12-03." (Br. of Def. Ex. B.)

[6]In *Miller v. GB Sales & Service, Inc.*, 275 F. Supp. 2d 823 (E.D. Mich. 2003), this Court came to a different conclusion:

> GB was aware that Miller suffered from Diabetes and depression and Miller informed GB that her absences were medically related. The FMLA and the regulations then placed the burden on GB to request and/or gather the information necessary for it to determine whether her absences were due to those serious health conditions and thus qualified as FMLA-leave.

*Id.* at 830. This Court's resolution of this issue obviously conflicts with the Sixth Circuit's later statement in the *Brenneman* case. 366 F.3d at 423 n.9. The Sixth Circuit, however, discussed the matter in a footnote, and it arguably takes the form of dicta. To the extent that *Brenneman* is not binding authority on this issue, it

Plaintiff argues that after three of her absences (accounting for eight days), she provided Defendant with a doctor's note stating that she had been absent for "medical illness."[7] As discussed above, however, such language is not specific enough to put Defendant on notice that the leave was taken for a "serious health condition."

Finally, Plaintiff argues that after these three absences, she also visited Defendant's Medical Department, where "she informed Defendant of her reason for absence." (Br. of Pl. 13.) It is clear that Plaintiff did in fact discuss her medical problems with nurse Patricia Gildersleeve, as was standard procedure at BASF's Wyandotte facility. These discussions, Plaintiff argues, put Defendant on notice of her need for FMLA leave.

The purpose Plaintiff's medical examinations, however, was to ensure that Plaintiff was healthy and able to return to work following extended sick leave, and to determine whether any work restrictions were necessary. None of Plaintiff's superiors worked in the medical department (McFall Dep. 30), and BASF's medical confidentiality policy *prohibited* Ms. Gildersleeve from releasing Plaintiff's medical information to others in the company. (Gildersleeve Dep. 12.) As Ms. Gildersleeve put it, if Plaintiff's supervisors had asked her,

---

nevertheless states a more appropriate rule as applied to the facts of this case.

The managers in *Miller* had an abundance of knowledge about the employee's health problems, such that a failure to recognize why she was absent was tantamount to willful blindness. Miller, 275 F. Supp. 2d at 824-27. In the present case, Plaintiff's superiors did not have the type of notice that would lead a reasonable person to question whether—even, perhaps, to assume that—her absence was related to a known serious health condition.

[7]One of Plaintiff's notes, dated June 25, states, "Tendinitis Right Achilles," and directs Plaintiff to "continue 'sit down' work" until June 30. (Def. Supp. Ex. 6.) This note, however, refers to Plaintiff's absence on June 6. Even assuming that the note is sufficiently specific, it was given to Defendant far too late.

11

"What was [Plaintiff's] diagnosis?", she would have responded, "I'm not able to release that medical information. It's confidential." (*Id.* at 53.)[8] In fact, this is exactly what happened. Kyrus McNeil states that when he contacted Ms. Gildersleeve and asked her "whether there were any medical issues" with Plaintiff, Gildersleeve responded, "No, there were none." Gildersleeve said nothing about asthma, bronchitis, Achilles tendinitis, or anything else. (McNeil Dep. 84-85.)

These medical examinations did not impart knowledge onto Defendant itself of Plaintiff's need for FMLA-qualifying leave. Again, "[T]he critical test . . . is whether the information . . . *was reasonably adequate to apprise the employer* of the employee's request to take leave for a serious health condition that rendered him unable to perform his job." *Brenneman*, 366 F.3d at 421 (emphasis added). The crucial parties for notice purposes are Plaintiff's supervisors—the managers, who have the authority and responsibility of making decisions about medical leave, termination, and other employee

---

[8]One piece of evidence suggests that Plaintiff may have waived this confidentiality. On April 14, Plaintiff signed an "Authorization for Release of Information," which authorized her medical information to be released to "BASF Corporation and its authorized employees and agents." It covered "Medical examination reports and/or conclusions related to a disability or fitness-to-work," and its purpose was to determine whether Plaintiff was "disabled or fit for duty." (Def. Supp. Ex. 3.) Despite this release, Ms. Gildersleeve contends that she could not release such information, and Plaintiff herself states that she understood the form to mean something different entirely:

> Q: Did you understand that you were authorizing BASF to see your medical records?
>
> A: I don't believe that's what this is . . . . I believe this is when I wanted my file from medical. I had to sign this paper saying I authorize them to give my whole file to me.

(McFall Dep. 43.)

matters. FMLA's notice requirement would be meaningless if it did not require notice "reasonably adequate to apprise" these particular parties. Even assuming that Plaintiff *could* have given timely notice to Defendant after returning from work, her medical examinations were not a reasonable means of doing so, since she understood that they were confidential and would not impart knowledge onto her supervisors. Plaintiff failed to meet her duty to inform Defendant of her need for FMLA leave.[9]

## IV. Conclusion

Plaintiff has failed to show that she provided Defendant with adequate notice of her need for FMLA medical leave. She did not need to mention FMLA explicitly, but she at

---

[9] It is also unclear that Plaintiff described her medical problems to Ms. Gildersleeve with sufficient specificity. For example, in the meeting addressing Plaintiff's April 9, 10, and 11 absences, Gildersleeve reported in her notes that Plaintiff had symptoms of an upper respiratory infection, and Plaintiff states that she was indeed suffering from that illness, a recurring symptom of her asthmatic bronchitis. There is no evidence, however, that Plaintiff told Ms. Gildersleeve that her symptoms were recurring, or that they were in any way related to asthmatic bronchitis. Ms. Gildersleeve even stated that Plaintiff's symptoms were consistent with a "common cold." (Gildersleeve Dep. 34.)

Plaintiff's second and third meetings with Ms. Gilderlseeve addressed absences entirely unrelated to asthma or bronchitis. At the meeting addressing Plaintiff's June 6 absence, Plaintiff states that "[t]he sick day on June 6 is established as being due to continuing tendinitis in her Achilles' tendon two years after surgery on that tendon." (Br. of Pl. 13.)t There is no evidence that she informed anybody that this ailment was serious enough to prevent her from working. In fact, the opposite appears to be true. Both Plaintiff's doctor's note and her health evaluation by Ms. Gildersleeve state that she should work while sitting down for the next several days. (Br. of Pl. Ex. 10.) If Plaintiff's health condition was indeed serious enough to qualify for FMLA time, there is no evidence that she reasonably informed anybody of its seriousness.

Finally, at the meeting addressing Plaintiff's absences on August 12, 13, 14, and 15, Gildersleeve's notes state that Plaintiff was off of work for "HTN," and that she'd experienced "migraines." (Br. of Pl. Ex. 6.) If indeed Plaintiff's ailments were serious enough to warrant FMLA time—a proposition which the facts do not support—there is no evidence that she put Gildersleeve on reasonable notice of FMLA eligibility.

least needed to convey information "reasonably adequate to apprise the employer"—importantly, the employer's decision makers—"of the employee's request to take leave for a serious health condition that rendered [her] unable to perform [her] job." *Brenneman*, 366 F.3d at 421.  This is not to say that she needed to inform a supervisor *directly*, just that she needed to take steps "reasonably adequate" that the crucial information would reach them.

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above and on the record, the Court hereby GRANTS Defendant's Motion.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  December 20, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 20, 2005, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager